IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. |
| ) | |
| ) | |
| ) | |
| FOREST RIDGE MEADOWS, ) | |
| Limited Partnership and ) | |
| MORTGAGE INVESTORS ) | |
| GROUP, INC ) | |
| ) | |
| Defendants. ) | |

COMPLAINT

Now comes, UNITED STATES OF AMERICA, by and through its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and David Hoff, Assistant United States Attorney, and for its cause of action alleges that:

1. This is a civil action brought pursuant to 28 U.S.C. § 1345, to foreclose the hereinafter described mortgage or other conveyance in the nature of a mortgage (hereinafter called "mortgage"), herein described, arising within Coles county, within the Central District of Illinois, and to join the following person(s) as defendant(s):

    Forest Ridge Meadows, Limited Partnership
    Mortgage Investors Group, Inc.

2. Attached as Exhibit "A" is a copy of the mortgage; Exhibit "B" is a copy of the note secured thereby; Exhibit "C" is the notice of acceleration; Exhibit "D" is a copy of the Loan Agreement.

3. Information concerning mortgage:

    (A) Nature of instrument:        Mortgage

    (B) Date(s) of mortgage(s):      Ex. A, September 4, 1986

    (C) Name(s) of mortgagor(s):     Ex. A, Forest Ridge Meadows,
                                     Limited Partnership

(D) Name of mortgagee: United States of America, United States Department of Agriculture, Rural Development, f/k/a Farmers Home Administration

(E) Date and place of recording: Ex. A, September 4, 1986 Coles County, Illinois

(F) Identification of recording: Ex. A, Doc. #485938, Vol. 428, Page 197

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original indebtedness, including subsequent advances made under the mortgage: $1,087,410.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

    (1) Legal description of the mortgaged premises:

        Lots 2, 3, 4, 5 and 6 in Lincolnwood Subdivision No. 6, Charleston, Coles County, Illinois

        Permanent Index Number: 02-2-14-335-000

    (2) Common address or location of mortgaged premises:

        2409 Eighth Street, Charleston, IL

(J) Statement as to defaults and amount now due:

    (1) Monetary default

    (2) The total amount now due is $1,067,134.56 as of April 2, 2007, plus interest accrued thereafter, court costs, title costs and plaintiff's attorney's fees.

(K) Statement as to per diem interest accruing under the mortgage after default: The per diem interest accruing under the mortgage after default is $273.15.

(L) Taxes due: General taxes for the year(s) 2006 not yet due and payable

(M) Name of present owner of the real estate: Forest Ridge Meadows, Limited Partnership

(N)  Name or names of persons, in addition to such owners, but excluding any non-record claimants as defined in the Illinois Mortgage Foreclosure Law, Chapter 110 Ill. Rev. Stat., Section 15-1101 et seq., who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated: MORTGAGE INVESTORS GROUP, INC.

    Plaintiff's mortgage constitutes a valid, prior and paramount lien upon the indicated interest in the mortgaged real estate, which lien is prior and superior to the right, title, interest, claim or lien of all parties and non-record claimants whose interest in the mortgage real estate are sought to be terminated.

(O)  Names of defendants claimed to be personally liable for deficiency, if any: N/A

(P)  Capacity in which plaintiff brings this foreclosure: As the owner and legal holder of said note, mortgage and indebtedness

(Q)  Facts in support of shortened redemption period, if sought: We are requesting the redemption period be shortened to 60 days due to the fact the fair market value of the mortgaged real estate is less than 90% of the amount of the judgment requested in the Complaint and Rural Development (formerly Farmers Home Administration).

(R)  Nondiscrimination provisions: In accordance with 7 CFR Part 3560, Subpart A, 3560.2 and the terms of the mortgage, the Notice of Marshal's Sale and the Marshal's Deed must include the following language:

"The property described herein was obtained or improved through Federal Financial assistance. This property is subject to the nondiscrimination provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for as long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer."

(S)  Facts in support of request for costs and expenses if applicable:

Plaintiff has been required to incur title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage.

(T)  Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought:

    (1) Failure to make required mortgage payments

3

    (U)    Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.

## REQUEST FOR RELIEF

Plaintiff requests:

(i)    A judgment to foreclose such mortgage, ordering:

    (a)    That an accounting may be taken under the direction of the court of the amounts due and owing to the plaintiff;

    (b)    That the defendants be ordered to pay to the plaintiff before expiration of any redemption period (or, if no redemption period, before a date fixed by the court) whatever sums may appear to be due upon the taking of such account, together with fees and costs of the proceedings (to the extent provided in the mortgage or by law);

    (c)    That in default of such payment in accordance with the judgment, the mortgaged real estate be sold as directed by the court, to satisfy the amount due to the plaintiff as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of judgment;

    (d)    That in the event the plaintiff is a purchaser of the mortgaged real estate at such sale, the plaintiff may offset against the purchase price of such real estate the amounts due under the judgment of foreclosure and order confirming the sale;

    (e)    That in the event of such sale and the failure of the person entitled thereto to redeem prior to such sale pursuant to this Article, the defendants made parties to the foreclosure in accordance with this Article, and all non-record claimants given notice of the foreclosure in accordance with this Article, and all persons claiming by, through or under them, and each and any and all of them, may be forever barred and foreclosed of any right, title, interest, claim, lien or right to redeem in and to the mortgaged real estate; and;

    (f)    That if no redemption is made prior to such sale, a deed may be issued to the purchaser thereat according to law and such purchaser be let into possession of the mortgaged real estate in accordance with 735 ILCS, Section 5/15-1701, et seq.;

(ii)    An order granting a shortened redemption period, if authorized by law.

(iii)    A personal judgment for a deficiency, if authorized by law.

(iv)    An order granting possession.

(v) An order placing the mortgagee in possession or appointing a receiver.

(vi) A judgment for fees, costs, and expenses.

(vii) Enforcement of its assignment of rents derived from said real estate.

(viii) Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

### ADDITIONAL REQUEST FOR RELIEF

Plaintiff also requests that the judgment for foreclosure or other orders entered herein provide for the following pursuant to 735 ILCS, Section 5/15-1506(f);

(i) Judicial sale conducted by the United States Marshal or his representative, at which the plaintiff is entitled to bid:

(ii) Title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for the preceding year which have not become due and payable as of the date of entry of the judgment of foreclosure, any special assessments upon the real estate, and easements and restrictions of record;

(iii) In the event a party to the foreclosure is a successful bidder at the sale, such party shall be allowed to offset against the purchase price to be paid for such real estate amounts due such party under the judgment of foreclosure or order confirming the sale.

UNITED STATES OF AMERICA, Plaintiff
Rodger A. Heaton
United States Attorney

By: s/David H. Hoff
David Hoff, Bar No. IL 1234072
Assistant United States Attorney
Urbana Federal Bldg. & U.S. Courthouse
201 S. Vine, Suite 226
Urbana, IL 61802-3369
217-373-5875
217-373-5891 (Fax)
David.hoff@usdoj.gov

5

Position 5

USDA-FmHA
Form FmHA 427-1 IL
(Rev. 12-6-84)

form of this Mortgage was prepared by the Offic. the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of John R. Clark, ~~District Director~~ Farmers Home Administration, 201 W. Springfield Avenue, Suite 508, Champaign, Illinois 61820

# REAL ESTATE MORTGAGE /and security agreement FOR ILLINOIS

THIS MORTGAGE is made and entered into by FOREST RIDGE MEADOWS LIMITED PARTNERSHIP

an Illinois limited partnership

residing in Cook County, Illinois, whose post office address is c/o Gottlieb & Schwartz 69 West Washington Street, Chicago, Illinois, 60602, herein called "Borrower" and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government,"

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| September 4, 1986 | $1,080,000.00 | 9.5% | September 4, 2036 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify as security for future advances with interest, and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby convey, mortgage, assign, and warrant unto the Government the following property situated in Coles County(ies), State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of Illinois, to wit:

Lots 2, 3, 4, 5 ~~& 6~~ *6* in Lincolnwood Subdivision No. 6, Charleston, Coles County, Illinois

**Exhibit A**

*197*

FmHA 427-1 IL (Rev. 12-6-84)

24. The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights ACt of 1964 and the Rehabilitation Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

25. This instrument also secures the obligations and covenants of Borrower set forth in Borrower's Loan Agreement of August 19, 1985, which is hereby incorporated herein by reference.

26. The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20-year period beginning September 4, 1986. No person occupying the housing shall be required to vacate prior to the close of such 20-year period because of early repayment. The borrower understands that should an unsubsidized project be converted to subsidized within 15 years from the date the last loan on the project is closed, that the period will be increased by 5 years. The borrower will be released during such period from these obligations only when the Government detemines that there is no longer a need for such housing or that Federal or other financial assistance provided to the residents of such housing will no longer be provided. A tenant may seek enforcement of this provision as well as the government.

27. All present and future contract rights, accounts receivable, general intangibles and revenue from or arising in connection with the apartment project located on the real estate described herein, including, but not limited to, tenant rent payments, tenant security deposits; Farmers Home Administration rental assistance payments; HUD housing assistance payments, contracts, and agreements are pledged as security to the United States of America acting through the Farmers Home Administration, in consideration of the loan of $1,080,000.00 evidenced by the promissory note previously described herein and all advances under said note and this mortgage.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this line, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

198

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws prescribing any statute of limitations or limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under State law, the benefit of all State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for him will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

199

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Champaign, Illinois 61820, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(Continued inside)

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this 4th day of September, 19 86.

FOREST RIDGE MEADOWS LIMITED PARTNERSHIP

_David R. Cope, Pres._ (signature)
Mainland Development Company, general ptr.

_David R. Cope_ (signature) _____ (SEAL)
David R. Cope, General Partner

_Michael A. Liberty_ (signature) _____ (SEAL)
Michael A. Liberty, General Partner

ACKNOWLEDGMENT

STATE OF ILLINOIS
COUNTY OF Coles } ss:

I, Kenneth L. Bast, a Notary Public, do hereby certify that David R. Cope, Partner, Michael A. Liberty, Partner and David R Cope, President of Mainland Development Co. personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal this 4th day of Sept. A.D. 19 86.

_Kenneth L. Bast_
Notary Public.

(SEAL)

My commission expires 7-16-87

Recorded on Sept. 4, 1986 at 11:45 a.m.   Coles Co. IL   Doc. #485938   Vol. 428 Pg. 197

_Jackie Bacon_ RECORDER

*Print, stamp or typewrite the names of the mortgagers and the notary beneath their signatures.

Form FmHA 1944-52
(4-85)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

MULTIPLE FAMILY HOUSING

PROMISSORY NOTE

| KIND OF LOAN |
|---|
| Title V of the Housing Act of 1949 |
| ☐ Sec. 523 or 524 Rural Housing Site |
| ☐ Sec. 514 Labor Housing |
| ☒ Sec. 515 Rural Rental Housing |
| ☐ Other Real Estate |

| STATE | COUNTY |
|---|---|
| **Illinois** | **Coles** |
| CASE NO. | |
| PROJECT NO. | |
| **01-9** | |

Date __**September 4**__, 19**86**

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in __**Champaign, Illinois**__

THE PRINCIPAL SUM OF __**ONE MILLION EIGHTY THOUSAND and NO/100**__

DOLLARS ($__**1,080,000.00**__), plus INTEREST on the PRINCIPAL of

__**Nine and One-Half**__ PERCENT (__**9.5**__%) PER ANNUM.

Payment of the Principal and Interest shall be as agreed between the Borrower and the Government as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to __**October 1**__, 19**86** shall be added to the Principal. The new Principal and later accrued Interest shall be payable in __**599**__ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of the new Principal herein $__**1,087,410.00**__ and the amount of regular installments in the box below, when determined:

☐ II.  Payments shall not be deferred. Principal and Interest shall be paid in _____ installments as indicated in the box below:

☐ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____ of each month beginning on _____, 19___ through _____, 19___.

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below:

| $ **8,685.83** | on | **November 1** | 19**86** and |
| $ **8,685.83** | thereafter on the **1st** | of each **month** | |

until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** __**fifty**__ ( **50** ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

Exhibit B

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of each advance in the Record of Advances.

Payments of principal and interest shall be applied in accordance with Farmers Home Administration's accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with Farmers Home Administration regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower providing the loan is in a current status. Refunds and extra payments, as defined in the regulations of the Farmers Home Administration according to the source of funds involved, shall be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Prepayment restrictions must be considered if the Borrower is subject to these restrictions and the prepayment of scheduled installments will cause the loan to be repaid prior to the expiration of the restricted repayment period.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies inability to obtain sufficient credit elsewhere to finance the actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near the community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

TRANSFER OF TITLE: Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased (except individual units leased to tenants), assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.

GRADUATION AGREEMENT: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. When the Borrower is subject to prepayment restrictions, refinancing will not be required until such restrictions are exhausted.

CREDIT SALE TO INELIGIBLE BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification", and "Graduation Agreement" do not apply if (1) this promissory note represents in whole or in part, payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the Borrower as an ineligible Borrower under Title V of the Housing Act of 1949, as amended and regulations issued thereunder. As long as the promissory note remains unpaid, the property purchased with this loan shall not be sold or transferred, either voluntarily or involuntarily, unless the Government consents to such transaction in writing.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations and provisions hereof.

Presentment, protest, and notice are hereby waived.

Notwithstanding any of the foregoing provisions, it is agreed and understood that neither the general nor limited partners of Forest Ridge Meadows shall be personally liable on this promissory note and that liability hereunder is limited to the assets of Forest Ridge Meadows.

FOREST RIDGE MEADOWS, Limited Partnership (SEAL)
(BORROWER)

/s/ MICHAEL A. LIBERTY, General Ptr.

/s/ DAVID R. COPE, General Partner (BORROWER) (SEAL)
c/o Gottlieb & Schwartz
69 W. Washington
Chicago, IL 60602 (ADDRESS)

/s/ Cope
Mainland Development Co., General Partner

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 820,894.25 | 9/4/86 | (8) $ | | (15) $ | |
| (2) $ 259,105.75 | 9/4/86 | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 1,080,000.00 | 9/4/86 |



| USDA | United States Department of | RURAL DEVELOPMENT Champaign, IL 61821 | 2118 West Park Court Suite A    Agriculture |
|---|---|---|---|

Phone: 217-403-6200
Fax: 217-403-6243
TDD: 217-403-6240

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

October 31, 2005

Forest Ridge Meadows, Limited Partnership
25 Pearl Street
Portland, ME 04101

Attn: David R. Cope, General Partner
Attn: Michael A. Liberty, General Partner
Attn: Mainland Development Corporation
    James Stanley President
    600 Sableoaks Drive
    South Portland, ME 04104

RE: Forest Ridge Meadows Apts.
    Charleston, IL

Subject: <u>NOTICE OF ACCELERATION OF YOUR DEBT TO THE UNITED STATES DEPARTMENT OF AGRICULTURE, RURAL DEVELOPMENT (FORMERLY FmHA), DEMAND FOR PAYMENT OF THAT DEBT, AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING CONCERNING THIS ACTION.</u>

Dear BORROWER:

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, United States Department of Agriculture, is now declared immediately due and payable. The loan(s) is (are) described as follows:

| Date of Instrument | Amount |
|---|---|
| September 4, 1986 | $1,080,000.00 |

The promissory note(s) and/or assumption agreement(s) is (are) secured by real estate mortgage(s) described as follows:

Recorded In:    Coles County, Illinois

| Date of Instrument | Document No. |
|---|---|
| September 4, 1986 | #485938, Volume 428, Page 197 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described real estate instruments(s).

The reasons for this acceleration of your indebtedness are as follows:

1. Failure to fund a Reserve Account in accordance with paragraph 9 of the Loan Agreement dated August 19, 1985 incorporated into the mortgage by reference and 7 CFR 3560.

RURAL DEVELOPMENT is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to:
USDA, Director, Office of Civil Rights, Washington D.C., 20250

EXHIBIT C

The indebtedness due is $1,038,312.99 unpaid principal, and $1,840.99 unpaid interest, as of October 31, 2005, plus additional interest accruing at the rate of $61.24 per day thereafter, plus any advances to be made by the United States for the protection of its security and interest accruing on any such advances. Unless full payment of your indebtedness is received and all actions as outlined in the attachment entitled "Tenant Protection Actions" are taken within 30 days from the date of this letter, the United States will take action to foreclose the above described real estate instrument, take possession of any project accounts, suspend any rental assistance, cancel any interest credit, notify tenants that foreclosure will be pursued, and pursue any other available remedies. Project rent rate levels shall not be increased due to loss of subsidies.

The Rural Development Servicing Office should be contacted immediately to discuss the steps to take to remedy the deficiencies in the account or pay the loan in full. Payment should be made by cashier's check, certified check, or postal money orders to the order of the USDA - Rural Development at your local servicing office. If you do not comply with all requirements to prepay, or do not submit to the United States any payment sufficient to pay the entire indebtedness, or comply with any arrangements agreed to between the Rural Development and yourself, the action or payment **WILL NOT CANCEL** the effect of this notice. Acceptance of such payment will be subject to agency regulations governing payments in full [and the provisions of the Housing and Community Development Act of 1987. Such provisions normally require restrictive-use covenants be placed in effect at the time of the prepayment.] If insufficient payments are received and credited to your account, or payment without tenant displacement protection actions are accepted, no waiver or prejudice of any rights which the United States may have for breach of any promissory note or covenant in the real estate instrument will result and the Rural Development may proceed as though no such payment had been made.

However, you have the opportunity to have an informal meeting with the decision maker (the undersigned) and /or an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your account(s) and proceeding with foreclosure. If you request an informal meeting with the decision maker or have any questions concerning the decision and/or facts used in making our decision, you should contact this office in writing to request a meeting. The request for an informal meeting must be sent to the undersigned no later than November 14, 2005. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer in lieu of, or in addition to, a meeting with this office. If you request an informal meeting with the decision maker, and the meeting does not result in a decision in which you concur, you will be given a separate timeframe in which to submit your request for an administrative appeal.

If you do not wish an informal meeting with the decision maker as outlined above, you may request an administrative appeal hearing with a member of the USDA, National Appeals Division. The request for an administrative appeal must be sent to the USDA National Appeals Division, Eastern Regional Office, 8909 Purdue Road, Suite 240, Indianapolis, IN 46268, no later than December 1, 2005. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received. If requesting an administrative appeal, please include a copy of this letter with your request.

In addition to an informal meeting, you have the right to request mediation or other form of alternative dispute resolution (ADR) to resolve the adverse decision. The request to use mediation or other form of ADR may be made at any time prior to a formal appeal hearing. A request to exercise ADR to settle the dispute on the denial will stop the running of the 30-day period you have to request an appeal. If you request an appeal and mediation, you have waived your right to an appeal hearing until after conclusion

of mediation or other ADR. However, you have the right to an appeal hearing within 45 days of the conclusion of mediation or ADR.

If you fail to comply with the requirements outlined herein, the United States plans to proceed with foreclosure.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

UNITED STATES OF AMERICA

BY: _____
DOUGLAS WILSON
State Director
Rural Development
United States Department of Agriculture

Date: October 31, 2005

Attachments

cc: Liberty Group, Inc. – Limited Partner
    RD Manager -, Champaign, IL
    RD Specialist - , Effingham, IL
    Administrator, RHS, ATTN.: MFH/PMD, STOP 0782, Washington, D.C.

## TENANT PROTECTION ACTIONS

(1)     Provide the Rural Development Servicing Office with a current list of all tenants showing their adjusted incomes. The Rural Development Servicing Office will:

   (a) Notify tenants that the project is being prepaid;

   (b) Send eligible tenants in the project Letters of Priority Entitlement (LOPE), for priority placement in other Section 515 projects.

(2)     Extend all tenant leases for 180 days after the date the accelerated loan was paid off at the same rental rates and terms that were in effect on the day of the acceleration. (If the tenant is receiving RA, the tenants' share of the rent will be reflected on the lease.)

(3)     Execute restrictive-use provisions, as appropriate, for incorporation into releases of security instruments to be filed. (If the loan was made prior to December 21, 1979, no restrictive use provisions will be included in the releases of security instruments, <u>unless</u> less than one year has elapsed since the date the borrower had submitted a request to prepay the loan (s) under the provisions of RD Instruction 1965-E.) (Note: Any tenants or applicants for occupancy protected by these restrictions may not have total shelter costs (rent and utilities) raised above 30 percent of adjusted income or current shelter costs, whichever is higher.) If the loan on this project to build or acquire new units was made on or after December 15, 1989, the restrictive-use provisions will remain for the term of the loan.

Form FmHA 1944-34
(8-1-80)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

# LOAN AGREEMENT FOR AN

☐ RRH Loan to a Partnership Operating on a Profit Basis
☐ RRH Loan to a Limited Partnership Operating on a Profit Basis
☐ RRH Loan to a Partnership Operating on a Limited Profit Basis
☒ RRH Loan to a Limited Partnership Operating on a Limited Profit Basis

1. __Parties and Terms Defined.__ This agreement dated __August 19, 1985__ of the __Forest Ridge Meadows Limited Partnership__, a Partnership, duly organized and operating under __laws of State of Illinois__, herein called "Partnership", whose post office address is __c/o Alan Pollack; Gottlieb & Schwartz 69 W. Washington, Chicago, Illinois 60602__, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called "the Government", is made in consideration of a loan, herein called "the loan", to Partnership in the amount of $ __1,080,000__ made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) of the Housing Act of 1949 to build a __Rural Rental Housing 515__ project. The loan may be sold and insured by the Government. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing". The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations".

2. __Execution of Loan Instruments.__ To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by __the general partners__ for the amount of the loan, payable in installments over a period of __Fifty (50)__ years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, __the general partners__ are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. __The general partners__ are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligation".

3. __Equal Opportunity and Nondiscrimination Provisions.__ The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Title VIII of the Civil Rights Act of 1968 related to Fair Housing regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement", including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Assurance Agreement (Under Title VI, Civil Rights Act of 1964)", a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. __Borrower Contribution.__ The amount of $ __56,850.00__ to be contributed by the Partnership from it's own funds for the land purchase or development will be placed or deposited with the lender and dispersed priod to any disbursement of interim loan funds or any FmHA loan funds.

5. __Accounts for Housing Operations and Loan Servicing.__ The Partnership shall establish on its books the following accounts, which shall be maintained in accordance with FmHA Regulation 7 CFR Part 1930-C so long as the loan obligations remain unsatisfied: A General Fund Account, a Tax and Insurance Escrow Account, a Security Deposit Account and a Reserve Account.

Position 2

☆ U.S. GPO 1980-765-054/17

*Exhibit D*

a. _General Operating Account_. By the time the Farmers Home Administration loan is closed or interim funds are obtained to preclude the necessity for multiple advances of Farmers Home Administration loan funds, which ever occurs first, the Partnership shall from its own funds deposit in the General Operating Account the amount of $ 22,737.00 .

b. _Reserve Account_. Transfers at a rate not less than $ 10,800.00 annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 108,000.00 and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Use of funds deposited to this account will be in accordance with FmHA Regulation 7 CFR Part 1930-C. With prior consent of the Government funds in the Reserve Account may be used by the Partnership:

To pay dividends to the partners of up to 8 percent per annum of the borrower's initial investment of $ 56,850.00 , provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 5 b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

To pay dividends to the partners or for any other purpose desired by the Partnership, provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5 b to be accumulated by that time, and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

6. _Regulatory Covenants_. So long as the loan obligations remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations and shall:

a. Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

b. Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

c. If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

d. Agree that if any provisions of its organizational documents or any verbal understandings conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

e. Unless the Government gives prior consent:

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of any partner(s) nor permit the general partner(s) to maintain less than a 5 percent financial interest in the organization nor cause or permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrow any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

f. Submit for the housing the required reports as per FmHA Regulation 7 CFR Part 1930-C to the Government for prior review.

g. If required by the Government, modify and adjust any matters covered by clause (f) of this section.

h. Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

i. Not alter, amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

j. Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligations, or the security.

k. If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ 56,850.00 , the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

7. General Provisions.

a. It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government in this agreement or elsewhere may be exercised by it in its sole discretion.

b. The provisions of this agreement are representations to the Government, to induce the Government, to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment or amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due payable and, if such entire amount is not paid forthwith, may take possession of an operate the housing and proceed to foreclose its security and enforce all other available remedies.

c. Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

d. Any notice, consent, approval, waiver, or agreement must be in writing.

e. This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement" of August 19 , 19 85 .

By: The General Partners

_David R. Cope_
David R. Cope, General Partner

_David R. Cope_
David R. Cope, President
Mainland Development Co.
General Partner

FOREST RIDGE MEADOWS LIMITED PARTNERSHIP
PARTNERSHIP NAME

_Michael A. Liberty_
Michael A. Liberty, General Partner

Re.

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| I (a) | **PLAINTIFFS** | **DEFENDANTS** |
|---|---|---|
| | United States of America | Forest Ridge Meadows, Limited Partnership, and Mortgage Investors Group, Inc. |
| **(b)** | COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) Coles County |
| **(c)** | ATTORNEYS U.S. Attorney's Office David H. Hoff 201 S. Vine St., Ste. 226 Urbana, Illinois 61802 (217)373-5875/FAX (217)373-5891 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION

■ 1  **U.S. Government Plaintiff**
☐ 2  **U.S. Government Defendant**
☐ 3  **Federal Question** (U.S. Government Not a Party)
☐ 4  **Diversity** (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated of Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another Place | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION

Title 28 U.S.C. § 1345 - Mortgage Foreclosure

## V. NATURE OF SUIT

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ■ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

*PERSONAL INJURY*
- ☐ 362 Person injury -- Med Malpractice
- ☐ 365 Personal Injury -- Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL INJURY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Other

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Blank Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 RICO
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. ORIGIN

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**   ☐ UNDER F.R.C.P. 23
**DEMAND** $1,067,134.56
Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES   NO X

## VIII. RELATED CASES IF ANY

Judge _____   Docket Number _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 4/10/07 | s/David H. Hoff |

UNITED STATES DISTRICT COURT    AUSA David H. Hoff